# United States Court of Appeals for the Federal Circuit

2006-1312, -1343

MITUTOYO CORPORATION, MITUTOYO AMERICA CORP.,
and HEXAGON METROLOGY NORDIC AB,

Plaintiffs-Cross Appellants,

v.

CENTRAL PURCHASING, LLC,

Defendant-Appellant.

Darle M. Short, Oliff & Berridge, PLC, of Alexandria, Virginia, argued for plaintiffs-cross appellants. With him on the brief was James A. Oliff. Of counsel were Vu Q. Bui and Kirk M. Hudson.

Marc S. Friedman, Sills Cummis Epstein & Gross P.C., of New York, New York, argued for defendant-appellant. Of counsel was Mark J. Rosenberg.

Appealed from: United States District Court for the Northern District of Illinois

Judge Samuel Der-Yeghiayan

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2006-1312, -1343

MITUTOYO CORPORATION, MITUTOYO AMERICA CORP.,
and HEXAGON METROLOGY NORDIC AB,

Plaintiffs-Cross Appellants,

v.

CENTRAL PURCHASING, LLC,

Defendant-Appellant.

_____

DECIDED:   September 5, 2007
_____

Before MAYER, RADER and MOORE, Circuit Judges.

MAYER, Circuit Judge.

Central Purchasing, LLC ("Central"), appeals the judgment of the United States District Court for the Northern District of Illinois, granting summary judgment of infringement of U.S. Patent No. 4,743,902 ("'902 patent") in favor of Mitutoyo Corporation and Hexagon Metrology Nordic AB (collectively "Mitutoyo"), and awarding damages using a 29.2% royalty rate and including sales of the alleged infringing goods by both Central and Harbor Freight Tools USA, Inc. ("HFTUSA"), in the royalty base. Mitutoyo Corp. v. Central Purchasing, LLC, No. 03-CV-990, 2006 U.S. Dist. LEXIS 9301 (N.D. Ill., Mar. 6, 2006) ("Damages Order"); Mitutoyo Corp. v. Central Purchasing, LLC, No. 03-CV-990, 2005 U.S. Dist. LEXIS 8280 (N.D. Ill., Mar. 6, 2006) ("Liability Order").

Mitutoyo and Mitutoyo America Corporation ("MAC") cross-appeal the trial court's judgment, dismissing their willful infringement claim, dismissing MAC as a party, and denying lost profit damages. Mitutoyo Corp. v. Central Purchasing, LLC, No. 03-CV-990 (N.D. Ill., Apr. 21, 2006) ("Willful Infringement Order"); Damages Order; Liability Order. Because the trial court erred by dismissing Mitutoyo's willful infringement claim and including HFTUSA's sales in the royalty base, but rendered a proper judgment in all other respects, we affirm-in-part, reverse-in-part, and remand.

## Background

Mitutoyo owns the '902 patent, which recites a device for electronically measuring the movement of one object in relation to another, e.g., the movement of a caliper's slide relative to its scale. On February 10, 2003, Mitutoyu and MAC filed suit against Central for patent infringement and breach of contract. They alleged that Central's sale of digital calipers manufactured by Guanglu Measuring Instrument Company, Ltd, infringed the '902 patent, both literally and willfully, and breached their 1994 settlement agreement—which resolved a 1992 patent infringement dispute, also involving the '902 patent, and provided that Central would refrain from any future importation or sale of infringing products. Central counterclaimed for invalidity, unenforceability, and non-infringement. In 1995, however, Central had brought a declaratory judgment action against Mitutoyo, alleging that the '902 patent was invalid and unenforceable; and it lost. Accordingly, under principles of res judicata, the trial court granted summary judgment on validity and enforceability in favor of Mitutoyo; Central does not challenge this ruling.

With respect to infringement, the parties' dispute turned only on whether the accused devices meet the "phase position identification" limitation of claim 1 of the '902 patent.[*] The parties stipulated to the following construction of "phase position": "The amount by which the received signal is displaced or shifted in time relative to a supply electrode signal. This is commonly referred to as 'phase angle' in the art." Based on

---

[*] Claim 1 provides:

A measuring device for capacitive determination of the relative position of two relatively movable parts with respect to one another comprising

a slide provided with a number of groups of supply electrodes distributed along the direction of relative movement, each of the groups having n number of supply electrodes, n being an integer greater than 2;

signal generator means having n number of signal outputs, each of the supply electrodes in each group being connected to a respective one of said signal outputs whereby all supply electrodes are supply [sic] with voltages according to a cyclic pattern,

the slide also being provided with at least one receiving electrode;

a signal processing unit connected to at least one receiving electrode;

a scale being provided with a single electronic pattern comprising internally galvanically isolated scale electrodes, each scale electrode comprising two mutually galvanically connected parts, one being a detecting part and being located close to the area of the scale over which the supply electrodes of the slide can be moved, the other of the two parts being a transferring part and being located close to the area over which the at least [sic] receiving electrode of the slide can be moved,

whereby the position of the slide along the scale determines the signal from the at least one receiving electrode which is derived from at least two adjacent supply electrode signals and <u>the position of the slide with respect to the scale can be determined by the identification in the signal processing unit of the phase position of said signal from the receiving electrode</u>.

'902 patent, col. 11, l. 3 − col. 12, l. 8 (emphasis added).

this claim construction and Central's admissions, the trial court found that Central literally infringed, because its devices determined "phase angle" in accordance with claim 1. Liability Order, 2005 U.S. Dist. LEXIS 8280, at *18-19. When calculating the phase angle, however, Central's calipers do not directly compare the received signal to the supply signal, but rather compare the received signal to a reference signal, which is generated from the same clock as the supply signal. Therefore, the trial court necessarily concluded, although without explicitly so stating, that Central infringes under the stipulated claim construction, because the "phase position identification" limitation is met regardless of whether the phase angle is ascertained via a direct or an indirect comparison of the received signal to the supply signal.

In light of the infringement finding, the trial court also found Central liable for breach of contract. Id. at *21. To the extent that it is liable for infringement, Central does not dispute breach of contract liability. However, the trial court found that Mitutoyo had insufficiently pled, and failed to properly prosecute, its claim for willful infringement. Accordingly, but without citing any authority as a basis for its action, it dismissed the willfulness claim and denied a jury trial on the issue. Willful Infringement Order.

Next, the trial court found that MAC was not a proper party to the action, because it concluded that it lacked standing. Although MAC is the exclusive distributor of Mitutoyo products in the United States, Mitutoyo admitted that it allowed other parties, namely General Tool Corp., to sell products covered by the '902 patent in the United States. The trial court, therefore, concluded that MAC did not possess the exclusive right to sell in the United States under the '902 patent, as required to maintain licensee

standing under <u>Ortho Pharmaceutical Corp. v. Genetics Institute, Inc.</u>, 52 F.3d 1026, 1032 (Fed. Cir. 1995). <u>Damages Order</u>, 2006 U.S. Dist. LEXIS 9301, at *10-11.

With respect to damages, the trial court found that Mitutoyo was not entitled to a lost profit award, either for infringement or breach of contract, because it failed to establish any market overlap between its goods and Central's. Whereas Mitutoyo's calipers retailed from $40.00 to $397.00 and have advanced functionality, Central's calipers sold from $19.12 to $48.98 and have more basic features. Given these facts and Mitutoyo's failure to introduce any direct evidence of market overlap, the trial court accepted Central's argument that its calipers were directed exclusively at "do-it-yourselfers" who, in the absence of its products, would have either purchased another low-end caliper or not purchased one at all. <u>Id.</u> at *12-16. The trial court did, however, award Mitutoyo damages based on a reasonable royalty. It determined that 29.2% was an appropriate rate based on its conclusion that Mitutoyo would not have accepted less than its profit margin of 29.2% and Central's anticipated profit margin was 70%. But, without offering any explanation for its decision, it used both Central's and HFTUSA's sales of the accused calipers in calculating the royalty base. <u>Id.</u> at *20. While the two companies have a strong business relationship, they are independent corporate entities, with different owners, and Mitutoyo introduced no evidence that Central would have otherwise agreed to pay royalties based on HFTUSA's sales.

Central appeals as to infringement and the royalty; Mitutoyo and MAC cross-appeal as to willful infringement, MAC's standing, and lost profits. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

2006-1312, -1343                                  5

<u>Discussion</u>

Beginning with infringement, we address each of the parties' challenges in turn.

*A. Infringement*

We review the trial court's grant of summary judgment of infringement <u>de novo</u>. <u>OddzOn Prods., Inc. v. Just Toys</u>, 122 F.3d 1396, 1401 (Fed. Cir. 1997). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>AquaTex Indus., Inc. v. Techniche Solutions</u>, 419 F.3d 1374, 1379 (Fed. Cir. 2005). Thus, summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). Because Central admits that its products meet all other limitations of claim 1, the only question is whether the trial court properly applied the parties' stipulated claim construction for the "phase position identification" limitation to the undisputed facts of this case. We conclude that it did.

Central argues that it does not literally infringe because the signal recorded by the receiving electrode in its devices is a sinusoidal wave, whereas the signal generated by the supply electrode is a square wave. Because these waves cannot be directly compared to determine the phase angle between them, it argues that its accused devices do not satisfy the "phase position identification" limitation. This argument, however, is without merit, and is based on an impermissibly narrow understanding of what claim 1 and the stipulated claim construction embody.

Neither the stipulated claim construction nor the language of claim 1 require calculation of the phase angle by <u>direct</u> comparison of the supply signal and the

received signal. Instead, they merely require the phase angle to be calculated based on some comparison of those two signals, even an indirect one. Therefore, a reference signal, generated by the same signal clock as the supply signal, and which has not undergone any phase shifting, provides an appropriate basis from which to calculate phase angle based on a comparison between that reference signal and the received signal. Moreover, this understanding of the "phase position identification" limitation is consistent with the specification, which expressly provides for determination of the phase angle via an indirect comparison of the supply signal and the received signal using a reference signal. '902 patent, col. 5, ll. 22-66; see also Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (The "specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996))).

By Central's own admission, its accused devices determine the phase angle by using a reference signal generated by the same clock as the supply signal, which does not undergo any phase shifting, and comparing the reference signal to the received signal. Liability Order, 2005 U.S. Dist. LEXIS 8280, at *18-19. Accordingly, the trial court's infringement finding was correct.

### B. Willful Infringement

We construe the trial court's dismissal of Mitutoyo's willful infringement claim as a dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure and, alternatively, as a dismissal for failure to prosecute under Rule 41(b). Both grounds for dismissal are procedural issues, not pertaining to patent law, that we

review under regional circuit law. Bowling v. Hasbro, Inc., 403 F.3d 1373, 1375 (Fed. Cir. 2005); Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc., 347 F.3d 935, 937 (Fed. Cir. 2003). Under Seventh Circuit law, dismissal for failure to state a claim is reviewed de novo. Eades v. Thompson, 823 F.2d 1055, 1060 (7th Cir. 1987). Dismissal of a claim for failure to prosecute is reviewed for abuse of discretion. Lockhart v. Sullivan, 925 F.2d 214, 217 (7th Cir. 1991). In such cases, the Seventh Circuit "will not set aside a trial court's discretionary order unless it is clear that no reasonable person could concur in the trial court's assessment of the issue under consideration." Daniels v. Brennan, 887 F.2d 783, 785 (7th Cir. 1989) (citations omitted). In making this determination, it considers the procedural history of the case and its status at the time of dismissal. Lowe v. City of E. Chi., 897 F.2d 272, 274 (7th Cir. 1990).

In its complaint, under its patent infringement count, Mitutoyo alleged:

10. The acts of infringement by Central Purchasing have occurred with full knowledge of U.S. Patent No. 4,743,902 and have been willful and deliberate, making this case exceptional within the meaning of the United States patent laws.

It further provided details about the declaratory judgment suit filed by Central in 1995, which sought to invalidate and render unenforceable the '902 patent, thereby establishing that Central had knowledge of the '902 patent prior to 2002. This is plainly more than sufficient to meet the requirements of Rule 8(a)(2) for pleading a willful infringement claim and avoid dismissal under Rule 12(b)(6). Christensen v. County of Boone, 483 F.3d 454, 458 (7th Cir. 2007) (providing that Rule 8(a)(2) requires only the "bare minimum [of] facts necessary to put the defendant on notice of the claim so that he can file an answer" (citations omitted)); see also Ferguson Beauregard/Logic

Controls, Division of Dover Res., Inc. v. Mega Sys., LLC, 350 F.3d 1327, 1343 (Fed. Cir. 2003) ("Willfulness does not equate to fraud, and thus, the pleading requirement for willful infringement does not rise to the stringent standard required by Rule 9(b).").
Therefore, to the extent that the trial court relied on Rule 12(b)(6) as the basis for its dismissal, it was in error.

The trial court also abused its discretion by dismissing the willfulness claim for failure to prosecute under Rule 41(b). Indeed, nothing in Mitutoyo's litigation conduct evidenced an intent not to pursue its willful infringement claim. The trial court relied heavily on the fact that Mitutoyo did not move for summary judgment of willful infringement. However, because summary judgment is only appropriate where there are no genuine issues of material fact, Fed. R. Civ. Pro. 56(c), its failure to so move likely indicates its sense that issues of material fact exist, not an intent to abandon its willfulness claim. See Flynn v. Sandahl, 58 F.3d 283, 288 (7th Cir. 1995) ("[W]e know of no cases, nor has Sandahl directed us to any, stating that a plaintiff must raise every legal issue in his motion for summary judgment."). Moreover, throughout the entire course of the litigation, including the parties' Joint Pretrial Order filed on April 14, 2005, Mitutoyo appraised the court of its willful infringement claim and its request for a trial on the issue. We therefore reverse the trial court's dismissal, reinstate the willful infringement claim, and remand in order for the trial court to conduct a trial on it.

### C. MAC's Standing

MAC's standing is a question of law that we review de novo. Consol. Edison Co. v. Richardson, 233 F.3d 1376, 1379 (Fed. Cir. 2000). Mitutoyo and MAC contend that MAC has standing because it is the exclusive distributor of Mitutoyo products in the

United States. This argument, however, misunderstands the relevant inquiry. In order for a licensee to have co-plaintiff standing, it must hold at least some of the proprietary rights under the patent. Ortho Pharm. Corp. v. Genetics Inst., 52 F.3d 1026, 1031 (Fed. Cir. 1995). Consequently, the pertinent question is whether MAC has the exclusive right to sell products made according to the '902 patent in the United States; the exclusive right to sell only Mitutoyo's products made according to the '902 patent, however, is not a sufficient basis for standing. Because Mitutoyo represented to the trial court that General Tool Corp. imports products covered by the '902 patent and has the right to sell them in the United States, Damages Order, 2006 U.S. Dist. LEXIS 9301, at *10-11, MAC does not possess the requisite exclusive right to sell.

### D. Damages

Whether a party may receive lost profits is a question of law that we review de novo. Poly-Am., L.P. v. GSE Lining Tech., Inc., 383 F.3d 1303, 1311 (Fed. Cir. 2004). We hold that the trial court correctly determined that Mitutoyo failed to meet its burden of establishing any market overlap, so as to entitle it to a jury trial on lost profit damages. See BIC Leisure Prods. v. Windsurfing Int'l, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("To recover lost profits as opposed to royalties, a patent owner must prove a causal relation between the infringement and its loss of profits. The patent owner must show that 'but for' the infringement, it would have made the infringer's sales."). As discussed above, Mitutoyo's calipers are a more complex product than that marketed by Central, and very little price overlap exists. This alone may have been insufficient to support the trial court's conclusion that Mitutoyo's and Central's products compete for entirely different market segments. However, Mitutoyo also did not put any direct

evidence into the record to suggest overlap among the consumers buying the companies' respective goods. And Central demonstrated that the demand for its products was highly elastic, with $21 being its customers' preferred price point— meaning that Mitutoyo's products are sold almost entirely outside the price range in which Central customers are likely to buy. Taken together, there was no basis from which a jury could have found lost profit damages.

With respect to the royalties, we review the trial court's determinations for erroneous conclusions of law, clearly erroneous factual findings, and clear errors of judgment amounting to an abuse of discretion. Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1543 (Fed. Cir. 1995). In determining the royalty rate, the trial court applied the correct law. Indeed, it was calculated based on a hypothetical negotiation between a willing patentee and a willing licensee at the time the infringement began. Rite-Hite Corp., 56 F.3d at 1554. Moreover, it was determined based on the entirety of evidence in the record. Smithkline Diagnostics, Inc. v. Helena Labs. Corp., 926 F.2d 1161, 1168 (Fed. Cir. 1991).

Central's challenge amounts to little more than an argument that the trial court should have placed more emphasis on the facts favoring a lower royalty rate, and fails to establish any clear error or abuse of discretion. It admits that its anticipated profit margin was 70% and that Mitutoyo's profit margin was 29.2%. While the trial court could have looked to other figures in determining what Central would have been willing to pay and what Mitutoyo would have required for a license, its use of these figures was not clearly erroneous. Moreover, the 29.2% figure is reasonable given the contentious history between these two parties. See Applied Med. Res. Corp. v. U.S. Surgical Corp.,

435 F.3d 1356, 1366 (Fed. Cir. 2006). On these facts, it is unlikely that Mitutoyo would have been interested in less than a 29.2% rate, and the trial court's decision to use that rate was certainly not an abuse of discretion.

With respect to the royalty base, however, the trial court committed clear error by including HFTUSA's sales, rather than Central's sales to HFTUSA. To begin, it provided no explanation as to why Central would have agreed to pay a royalty based on those sales. And contrary to Mitutoyo's contention, the business relationship between HFTUSA and Central, without more, does not provide a sufficient justification for including HFTUSA's sales in the base. In Allen Archery, Inc. v. Browning Manufacturing Co., 898 F.2d 787 (Fed. Cir. 1990), a parent-subsidiary relationship existed between the infringing companies, and this made the price of the infringing goods sold between them an inappropriate basis for calculating the royalty. Instead, the trial court used the price at which goods were sold to consumers. Id. at 790. Here, there is no corporate relationship between Central and HFTUSA, and there are no courses of dealing or other evidence to suggest that Central would have agreed to pay royalties based on both its sales and HFTUSA's sales. Accordingly, Allen Archery cannot be used to sustain the trial court's action. We therefore reverse the trial court's damages award insofar as it includes HFTUSA's sales in the royalty base, and remand for a proper accounting of the base.

### Conclusion

Accordingly, the judgment of the United States District Court for the Northern District of Illinois is affirmed-in-part and reversed-in-part, and the case is remanded for further proceedings in accordance with this opinion.

AFFIRMED-IN-PART; REVERSED-IN-PART; and REMANDED

2006-1312, -1343                    12